Dear Ms. Bohrer:
You have asked for clarification of two provisions in the Louisiana Emergency Assistance and Disaster Relief Act of 1993, in particular LSA-R.S. 29:727E and LSA-R.S. 29:727F(5), which you believe may be in conflict. LSA-R.S. 29:727 provides for the authority of the parish president to declare a local disaster or emergency.
Specifically, LSA-R.S. 29:727E states:
 when the parish president declares a local disaster or emergency within such subdivision, the parish president shall carry out the provisions of this Chapter. Nothing contained herein shall be construed to confer upon the parish president any authority to control or direct the activities of any state agency. (emphasis added)
LSA-R.S. 29:727F(5) then provides that the parish governing authority may:
 direct and compel the evacuation of all or part of the population from any stricken or threatened area within the boundaries of the parish if he deems this action necessary for mitigation, response or recovery measures.
In order to answer your question we must look to the intention of the legislature as there is little or no reported jurisprudence interpreting the provisions of the Louisiana Emergency Assistance and Disaster Act of 1993 (Act). The Act was originally introduced as House Bill No. 1312 by Representative Hunt Downer, and later replaced in Committee by House Bill No. 2048. The purpose was to repeal the old civil defense and emergency preparedness statutes, LSA-R.S. 29:701 through R.S. 716 and replace them with LSA-R.S.29:721 through R.S. 29:736.
House Bill 2048 was first heard in the House Judiciary Committee where Colonel Bill Croft, assistant director for the State of Emergency Preparedness, testified that the effects of Hurricane Andrew prompted a review by the office of emergency preparedness of the Louisiana Disaster Act of 1974. As a result, officials determined that a revision was necessary in order to address emergency preparedness for all hazards. Further testimony reported that "present law provides that the principal executive officer of a local government subdivision is the only person who can declare a local disaster, and the proposed law would provide that only the parish president or his equivalent, can declare a local disaster or emergency. He pointed out that the parish president would have the same authority as the governor under the proposed law." (Louisiana House of Representatives, Committee onJudiciary; Minutes of meeting, 1993 Regular Session, May 11, 1993 at page 14)
Amendments were adopted which explicitly provided that the new law was not to supersede any laws governing the powers, duties, and authority of the Department of Environmental Quality or the Oil Spill Prevention and Response Act.
The Bill passed the House of Representatives and moved to the Senate Committee on the Judiciary B where Representative Downer explained that under the new law there would be sixty-four separate parishes, each of whom would have an emergency preparedness plan which would allow the mayor president, the parish president or the police jury president to call an emergency to evacuate individuals from low lying areas. Representative Downer testified that the grant of authority to the parish president to declare a state of emergency was necessary in order to allow the governor to activate the National Guard and to provide that there can be a state of emergency without having a disaster. After technical amendments were adopted, the Bill was reported out of Committee and passed the Senate floor with no further amendments or discussion. (LouisianaState Senate, Committee on Judiciary B; Verbatim minutes; May 28, 1993 at page 6)
The testimony before the legislative committees suggests that it was the legislature's intention to grant to the parish president the exclusive and absolute authority to order the evacuation of individuals from the parish when there was a need for an immediate response to a local emergency. Employees of state agencies residing in a parish where the parish president has called a local emergency and ordered an evacuation would be subject to that order.
The provisions of LSA-R.S. 29:727E which provide that the parish president shall not "control or direct the activities of any state agency" are not in conflict with the authority to evacuate the population of a parish in an emergency. The "activities" of an agency can be defined and read as the "duties" or "functions" of the state agency. (Webster's Third New InternationalDictionary, C. G. Merriam Co., Springfield, MA, 1976). While the parish president may order an evacuation of state agency employees, he may not direct or control the duties or functions of the agency itself.
It is important to note that the provisions of LSA-R.S. 29:727
must be read in pari materia with the exclusions provided for in LSA-R.S. 29:736 which provide that nothing in the Act shall supersede the powers duties and authority of the Department of Environmental Quality, the Department of Public Safety and Corrections, office of the state police, or the Louisiana Oil Spill Coordinator regarding oil spill prevention, planning, response, removal, and liability.
It is therefore our opinion that should the parish president declare a state of emergency, state agency employees would be subject to the parish president's order to evacuate. However, nothing in the Act would confer on the parish president the authority to direct the duties or functions of the state agency or order the evacuation of employees necessary to carry out the duties of those state agencies enumerated in the LSA-R.S. 29:736.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ ISABEL WINGERTER ASSISTANT ATTORNEY GENERAL